952 F.Supp. 644 (1997)
ACCEPTANCE INSURANCE CO., Plaintiff,
v.
SDC, INC., Defendant.
No. 4:95CV01989 GFG.
United States District Court, E.D. Missouri, Eastern Division.
February 6, 1997.
*645 John T. Walsh, Gallop and Johnson, St. Louis, MO, Harold G. Belsheim, II, Gallop and Johnson, Belleville, IL, Stephen M. Calder, Paul D. Rowe, Jr., Palmer and Biezup, Philadelphia, PA, for plaintiff.
James L. Thomas, Waynesville, MO, Sidney B. Klovsky, Wade F. Suthard, Klovsky and Kuby, Philadelphia, PA, for defendant.

MEMORANDUM OPINION
GUNN, District Judge.
In this subrogation case, the denouement rests on the issue of whether the notice of tender of defense was timely and adequate. The Court finds that it was and therefore rules in favor of the plaintiff-subrogee Acceptance Insurance Company (AIC) and against defendant subrogor SDC, Inc. (SDC).
This matter was tried to the Court. Pursuant to Fed.R.Civ.P. 52(a), this Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.
AIC is the insurer of Springfield Aluminum, Inc. d/b/a Springfield Marine Co. AIC seeks to recover from SDC the sum of $82,000 plus costs, expenses, expert witness fees and attorney's fees under an indemnification theory.
This action arises from injuries sustained by Eyal Nahom while he was a passenger on the Delaware River near Philadelphia, Pennsylvania, in a boat described as a 1990 Bayliner 2450 Arriva. Nahom alleged that he was injured when a defective casting in his seat broke and caused him to fall. Nahom sued the manufacturer, Bayliner Marine Corporation, and the retailer of the boat, Dredge Harbor Yacht Sales, Inc. Nahom v. Dredge Harbor Yacht, No. 94-CV-6660 (E.D.Pa. 1994). Dredge Harbor tendered the defense to Bayliner, which in turn tendered the defense to Springfield Marine because Springfield supplied the seat to the manufacturer.
AIC defended the action on behalf of Springfield. AIC alleges that it tendered the defense to SDC, which supplied and manufactured the seat base to Springfield, but SDC refused to defend the claim. AIC also asserts that it attempted to bring SDC into the Nahom case, but the District Court denied AIC's motion. AIC ultimately settled with Nahom for $82,000.
An ancillary jurisdiction matter has been raised which the Court will treat before moving into the critical issue  the timeliness and adequacy of the indemnification tender.

I. Admiralty Jurisdiction
AIC maintains that this Court has admiralty jurisdiction over this matter pursuant to 28 U.S.C. § 1333. SDC denies that the Court has admiralty jurisdiction but concedes that the Court has diversity jurisdiction under 28 U.S.C. § 1332 since AIC is a Nebraska corporation and SDC is a Missouri corporation with its principal place of business in Sullivan, Missouri. Venue in this Court is proper under 28 U.S.C. § 1391.
A party seeking to invoke admiralty jurisdiction must satisfy a two-part test: (1) locality, that is, the site of the waterway, and (2) nexus, that is, the status of the vessel or activities and the connection with maritime activities. Three Buoys Houseboat Vacations v. Morts, 921 F.2d 775, 777 (8th Cir.1990), cert. denied, 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). "A court applying the location test must determine whether the tort occurred on navigable water." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, ___, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). The connection or nexus test raises two issues: first, the Court must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce; and second, the Court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Id.
*646 Here, there is no real dispute regarding the Delaware River's status as a navigable waterway. Thus, only the nexus or connection part of the test is at issue. Looking to the general features of the incident involved  a passenger injured on a boat travelling on a navigable waterway due to an allegedly defective seat  the Court first concludes that the incident has a potentially disruptive impact on maritime commerce. Second, carrying passengers on a vessel on a navigable waterway is a traditional maritime activity. See Duluth Superior Excursions, Inc. v. Makela, 623 F.2d 1251, 1253 (8th Cir.1980). The fact that the boat at issue here was a pleasure craft rather than a commercial craft carrying passengers for hire does not change the outcome. See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674-75, 102 S.Ct. 2654, 2658-59, 73 L.Ed.2d 300 (1982) (collision between two pleasure boats on navigable waters has significant relationship with maritime commerce). Admiralty jurisdiction encompasses accidents involving pleasure boats engaged in non-commercial activities on navigable waterways. St. Hilaire Moye v. Henderson, 496 F.2d 973, 979 (8th Cir.) (finding admiralty jurisdiction over negligence action filed against operators of pleasure boat by passenger who was thrown from boat and struck in leg by boat's propeller), cert. denied, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974).
Moreover, SDC sold the allegedly defective part to Springfield Marine for use as a seat base to be placed on boats. Springfield Marine sold the part to Bayliner with the clear understanding that the part would be used on a boat. Bayliner installed the seat on a 25-foot motorboat with a 300 horsepower engine. Consequently, all the parties involved in the manufacturing and assembling process are engaged in commercial maritime activity. The manufacture, distribution and installation of allegedly defective passenger seats on boats designed to travel on navigable waterways certainly has a potentially disruptive impact on maritime commerce. In ContiCarriers & Terminals, Inc. v. BorgWarner Corp., 593 F.Supp. 400, 402 (E.D.Mo. 1984), then Chief Judge Nangle held: "A claim alleging negligence on the part of a manufacturer or distributor of a part of a vessel sounds in admiralty." Accordingly, "the proper substantive law to be applied is federal maritime law." Id.
This case, however, is an indemnity action based on plaintiff's payment of a claim of negligence by the supplier of an allegedly defective product. "[W]hen indemnification is sought either under a maritime contract or under a theory of primary/secondary negligence based on a maritime tort, federal maritime law applies." M & O Marine, Inc. v. Marquette Co., 730 F.2d 133, 135 (3d Cir. 1984). Therefore, this Court has admiralty jurisdiction over this matter.

II. Indemnity
To prevail on its indemnification theory, AIC must show: (1) a right to indemnity; (2) potential liability in the underlying action (its own); (3) the reasonableness of the settlement amount; and (4) tender to SDC of the choice of approving the settlement or taking over the defense and agreeing to hold AIC harmless. See Parfait v. Jahncke Service, Inc., 484 F.2d 296, 303-05 (5th Cir. 1973), cert. denied, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974).
Here, the Court agrees that AIC has the right to indemnity as the innocent seller of a defective product. Potential liability in the underlying lawsuit was established by AIC's expert witness, who states that the seat failure was caused by excess porosity in the seat base.
AIC next contends that the settlement amount of $82,000 was reasonable. The injured party, Eyal Nahom, was seriously injured in the underlying accident sustaining permanent disability. Mr. Nahom submitted medical records indicating that he had suffered a serious, permanent injury to his back and that he had incurred $6,107 in medical expenses. The District Court in the Nahom case stated that a verdict in favor of Mr. Nahom was likely and that $100,000 would be a reasonable settlement.
AIC is the insurer of Springfield Aluminum, Inc., and made payments on behalf of Springfield on Nahom's claim arising out of the accident. Counsel for Springfield had concluded that it would be probable for Nahom *647 to receive a jury award of some kind and for Springfield to rely on a jury verdict in its favor was not a reasonable stand to take, vis a vis settlement for a reasonable sum. Accordingly, based on the record, the Court finds that the settlement amount of $82,000 is reasonable  an amount not heatedly disputed. The potential for liability in the underlying action is clear.
SDC argues that the tender occurred too late for it to have had any meaningful opportunity to analyze its potential liability or the reasonableness of the proposed settlement. Therefore, SDC argues that AIC should have to establish actual rather than merely potential liability. See, e.g., Weissman v. Boating Magazine, 946 F.2d 811, 813 (11th Cir.1991) (when settling indemnitee has not given indemnitor reasonable opportunity to review, pass upon, or participate in settlement, equitable indemnity principles compel demonstration of actual rather than potential liability).
With respect to the tender of defense, the evidence at trial established the following sequence of events:
December 23, 1994  tender of defense in Nahom v. Bayliner by Bayliner to Springfield Marine.
February 1, 1995  acceptance of defense by AIC for Springfield.
May 26, 1995  tender of defense to SDC by Springfield (AIC).
June 8, 1995  notification to SDC of trial setting for June 26, 1995 and need to pursue settlement. Again, tender of defense to SDC.
June 15, 1995  letter on behalf of Springfield (AIC) to SDC advising of $82,000 offer and suggesting reasonableness of amount and offering SDC opportunity to approve settlement or take over defense. If no action taken by SDC, Springfield to settle and seek full indemnification from SDC.
June 26, 1995  letter from Springfield to SDC advising of intent to settle and seek indemnification.
With the trial date of June 26, 1995 glaring down, AIC's actions in settling the case were sound. SDC's indolence in doing nothing was not. Accordingly, the Court finds that tender of the defense was timely.
In conclusion, the Court finds each element of AIC's indemnification theory has been met. It had the right to indemnity; potential liability existed; the settlement offer of $82,000 was reasonable; proper tender of the defense of the case was timely made under the circumstances.
The Court therefore grants judgment in favor of Acceptance Insurance Company against SDC, Inc. in the sum of $82,000. AIC has requested an award of costs, expenses, expert witness fees and attorney's fees. Counsel for AIC may file an application for costs, expenses and fees in accordance with Local Rules 8.02 and 8.03.